UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM T. SEABOLT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO. 3:17-CV-470- MGG ) |
| NANCY A. BERRYHILL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Plaintiff William Seabolt ("Seabolt") filed his complaint in this Court seeking reversal of the Social Security Commissioner's final decision to deny his application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Alternatively, Seabolt seeks remand for further consideration of his application. This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, this Court **REMANDS** this case to the Social Security Administration for further proceedings.

**I.    PROCEDURE**

On August 2, 2011, in Kentucky, Seabolt protectively filed applications for DIB and SSI pursuant to 42 U.S.C. § 423 alleging disability beginning November 30, 2009.[1]

---

[1] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Therefore, this order will only refer to 20 C.F.R. § 404 for efficiency.

On February 5, 2013, a video hearing was held before an administrative law judge ("ALJ"). On May 22, 2013, the ALJ ("2013 ALJ") issued her decision denying Seabolt's application for DIB and SSI having found that he was not disabled as defined by the Social Security Act. Seabolt did not appeal this decision.

On April 30, 2014, Seabolt again filed applications for a period of disability to receive DIB and SSI, alleging disability beginning May 23, 2013. Seabolt appeared and testified at a hearing held on April 12, 2016, in Middlesboro, Kentucky before a different ALJ. On September 9, 2016, the second ALJ ("the ALJ") issued a decision again denying Seabolt's application for DIB and SSI having found that there was no significant change in his condition, thus he was not disabled as defined by the Social Security Act. On April 12, 2017, the Appeals Council denied Seabolt's request for review, making the ALJ's decision the final decision of the Commissioner.

Subsequently, Seabolt moved to the Northern District of Indiana. On June 16, 2017, Seabolt filed a complaint in this Court seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). On November 6, 2017, Seabolt filed his opening brief. Thereafter, on December 15, 2017, the Commissioner filed a responsive memorandum asking the Court to affirm the decision denying Seabolt's benefits. Seabolt filed his reply brief on January 22, 2018.

Through the instant complaint, Seabolt seeks reversal or remand of the ALJ's decision, arguing that he inappropriately applied *res judicata* when he used the Residual Functional Capacity ("RFC") determination made by the previous ALJ in 2013 ("the 2013 RFC") to reach his 2016 decision about whether Seabolt was disabled rather than

2

crafting his own RFC by reviewing the facts and issues *de novo*. Seabolt also contends that the ALJ erred in step five when he failed to inform the vocational expert ("VE") of all the limitations included in the RFC he adopted from the 2013 ALJ's decision. Therefore, Seabolt contends the VE was unaware of all his limitations such that the VE's conclusion that Seabolt could perform other jobs could not be supported by substantial evidence.

The Commissioner opposes all of Seabolt's arguments.

## II. ANALYSIS

### A. Standard of Review

On judicial review, the Social Security Act requires that the Court accept the Commissioner's factual findings as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2005). However, the ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The ALJ must provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal

3

standard. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence must be "more than scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The ALJ must build a logical bridge from the evidence to his conclusion and a reviewing court is not to substitute its own opinion for that of the ALJ, or to re-weigh the evidence. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### B. *Res Judicata*

#### 1. **Applicable Sixth Circuit Standard**

An unsuccessful applicant is not prevented from applying for disability benefits again with a separate application that claims a later disability-onset date. *See* 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* A second application starts the process anew and could result in an award of benefits for the new period of time. *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998). However, in the Sixth Circuit, where the ALJ sat while assessing Seabolt's

4

disability applications, an ALJ considering a claimant's second application is bound to the first ALJ's determination absent changed circumstances. *Drummond v. Comm'r of Soc. Sec.*, 126 F3d 837 (6th Cir. 1997). Consistent with *Drummond*, Acquiescence Ruling 98-4(6) instructs ALJs in the Sixth Circuit to adopt a previous ALJ's finding "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." AR 98-4(6), 1998 WL 283902 (June 1, 1998).[2] Together, *Drummond* and AR 98-4(6) instruct a subsequent ALJ to adopt an earlier decision if the evidence does not indicate a material factual change has occurred.[3] *Id*.

In order for the claimant to satisfy [the] burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 647 (6th Cir. 2013).[4]

---

[2] AR 98-4(6) applies "only to disability findings in cases involving claimants who reside in Kentucky, Michigan, Ohio, or Tennessee at the time of the determination or decision on the subsequent claim at the initial, reconsideration, ALJ hearing or Appeals Council Level." AR 98-4(6) at 3.

[3] The Seventh Circuit does not require the change in facts be material because "while evidence in an initial application may not be strong enough by itself to establish disability, it might reinforce or illuminate the evidence developed for a second proceeding." *Groves*, 148 F.3d at 810. Under *Drummond* and AR 98-4(6), the Sixth Circuit requires a repeat claimant to meet a more stringent standard by also showing the new condition is material. Therefore, if remand in a Social Security appeal is appropriate under the Sixth Circuit standard, it will necessarily be appropriate under the Seventh Circuit's less demanding standard. Here, the Court will apply the Sixth Circuit standard because all of Seabolt's proceedings now under review occurred in the Sixth Circuit while he resided in Kentucky. As will be demonstrated below, remand of Seabolt's claim is warranted under the Sixth Circuit standard making it unnecessary to determine whether the Seventh Circuit should be applied because Seabolt currently resides in Indiana.

[4] Since Seabolt's Social Security appeal before this Court became ripe, the Sixth Circuit clarified this standard stating that *Drummond* and *res judicata* would apply if an individual "files a second application for the same period of time finally rejected by the first application and offers no cognizable explanation

Additionally, a subsequent claim carries a presumption of continuing non-disability. *Drogowski v. Comm'r of Soc. Sec.*, No. 10-12080, 2011 WL 4502988 at *8 (E.D. Mich. July 12, 2011) (citing *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988)). Therefore, for a subsequent claim to be successful, a claimant must not merely present new and material evidence, but must show that her condition has deteriorated from the state of her condition at the time the ALJ made the decision. *Id.*

Here, the ALJ relied on *Drummond* and AR 98-4(6) when he concluded that he was precluded from defining Seabolt's RFC himself and must apply the 2013 RFC determination to Seabolt's second DIB and SSI applications. Specifically, the ALJ concluded:

> In reviewing this medical evidence of record, I do not find new and material [sic] regarding the claimant's impairments . . . . [The] residual functional capacity assessment is supported by the claimant's testimony at the hearing, which suggested no significant change in his condition, and the medical evidence of record, including his course of treatment and the objective medical findings.

---

for revising the first decision." *Earley v. Comm'r of Soc. Sec.*, No. 17-4007, 2018 WL 3134547 at *3 (6th Cir. June 27, 2018). "To serve the interests of finality, efficiency, and the consistent treatment of like cases, it is fair for an ALJ to take the view that the ALJ's findings are a legitimate, albeit not binding, consideration in reviewing a second application absent new and additional evidence." *Id.* This narrower interpretation of *Drummond* is similar to the Seventh Circuit standard. *Compare Earley*, 2018 WL 3134547 (narrowing the scope of the Sixth Circuit standard for subsequent applications for Social Security disability benefits), *and New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) (holding that res judicata only "foreclose[s] successive litigation of the very same claim."); *Groves*, 148 F.3d at 810 (opining that res judicata does not necessarily preclude relitigation of issues essential to a second claim for an unadjudicated period of time). However, *Earley* had not been decided when the ALJ opined on Seabolt's case and therefore does not control this Court's analysis of the ALJ's decision.

[DE 14 at 30]. Relying on a State agency medical doctor who opined in March 2015 that Seabolt could perform light work with limitations, the ALJ concluded there were no new and material conditions that warranted *de novo* review. [*Id.*].

Now Seabolt argues that the ALJ erred in adopting the 2013 RFC when there were two new and material conditions that warranted a new RFC determination. Specifically, Seabolt contends that the record before the ALJ included evidence of a shoulder injury that occurred after the 2013 disability determination and of carpal tunnel syndrome ("CTS") that was not accounted for in the 2013 RFC determination and has become significantly worse. As such, Seabolt alleges that he presented evidence to the ALJ of functional limitations that had not manifested at the time of the first ALJ's RFC determination. Seabolt contends that evidence related to his shoulder impairment and CTS suggests limitations constituting a material change in his residual functional capacity ("RFC") from light work to sedentary work. Therefore, Seabolt argues the ALJ erred by concluding that there was no new and material evidence that would prevent him from being bound to the 2013 RFC.

The Commissioner opposes this argument arguing that the ALJ extensively discussed both medical conditions before determining neither were material. [DE 22 at 5]. In support, the Commissioner cites the ALJ's explicit discussion of Seabolt's shoulder injury and his related testimony at the hearing. [*Id.* at 6]. Similarly, the Commissioner notes the ALJ's discussion of Seabolt's CTS, which included reference to Seabolt's treatment records. [*Id.*] The ALJ did indeed discuss Seabolt's shoulder impairment and CTS, but not as effectively as required under the Sixth Circuit standard.

7

### 2. Shoulder Impairment

The ALJ discussed Seabolt's right shoulder pain and accompanying degenerative joint disease in his Step Two analysis determining that the shoulder impairment was not severe. The ALJ does not mention the shoulder impairment in the section of his decision analyzing Seabolt's residual functional capacity ("RFC"). Moreover, the ALJ's discussion of the shoulder impairment does not compare the current evidence to the 2013 ALJ's findings to give any indication of whether the shoulder evidence was considered before or has indeed demonstrated a change in Seabolt's resulting limitations.

Nevertheless, the ALJ's severity analysis acknowledges the new evidence related to Seabolt's shoulder impairment. The ALJ cites to emergency department records dated November 19, 2013—almost six months after the 2013 ALJ denied Seabolt's first application for disability benefits—following a fall two days before. Specifically, the ALJ refers to x-rays revealing extensive degenerative disease and bone spurs, but discounts this evidence, stating that "[t]he record does not evidence further treatment or any significant complaints of symptoms after this time." [DE 14 at 22]. The ALJ then cites treatment notes from a pain management consultant Seabolt visited on November 3, 2015, complaining primarily of low back and neck pain. [DE 14 at 22 (citing DE 14 at 853–59)]. In those treatment notes, the pain doctor reported that Seabolt experienced "tenderness in the right shoulder with some decrease in range of motion due to pain" upon examination. [DE 14 at 854]. However, the ALJ appears to discount the pain

doctor's report as well stating that Seabolt "did not complain that his right shoulder pain was particularly bothersome." [DE 14 at 22].

Further, the ALJ indicates that Seabolt "did not testify that he experiences severe symptoms of this impairment." [DE 14 at 22]. With nothing further, the ALJ concludes that Seabolt's "degenerative joint disease of the shoulder would not have more than a minimal effect on [his] ability to perform basic work activities." [DE 14 at 22]. With this indirect statement, the ALJ seems to suggest that the post-2013 decision shoulder evidence in the record was not material. Put another way, the ALJ implies that there was not a "reasonable probability" that the new evidence would have changed the 2013 ALJ's decision on Seabolt's disability claim. *See Schmiedebusch*, 536 F. App'x at 647.

Yet without further discussion of even the minimal effect of the shoulder impairment on Seabolt's RFC, the ALJ has left the Court unable to discern whether or not the new shoulder impairment evidence was indeed material or if the evidence would justify a shift in Seabolt's RFC to sedentary work. The ALJ's failure to directly consider the materiality of the shoulder evidence is also a bit surprising given the ALJ's apparent understanding of the implications of *Drummond* as seen in his explicit comparison of evidence of Seabolt's other impairments to the 2013 decision in the RFC section of his decision.

Moreover, the ALJ's analysis of Seabolt's shoulder impairment actually misrepresents the record. Despite the ALJ's statement to the contrary, Seabolt did testify regarding his shoulder pain at the hearing. He testified that his right shoulder pain was the second worst condition plaguing him [DE 14 at 56] and that he was unable to play

9

horseshoes anymore because his shoulder prevented him from picking anything up. [DE 14 at 71–72]. By ignoring Seabolt's testimony and discounting the medical evidence regarding the effects of Seabolt's shoulder impairment, the ALJ has not allowed this Court to trace the path of his reasoning and to assure the ALJ considered and developed the entire record. Without such a logical bridge, the case must be remanded.

### 3. Carpal Tunnel Syndrome

In regards to Seabolt's CTS, the ALJ conducted a more thorough analysis, but again failed to create a logical bridge between the evidence and his conclusion. Again, however, the ALJ's consideration of Seabolt's CTS was limited to the Step Two severity analysis without any mention in the RFC analysis.

In the severity analysis, the ALJ referenced objective medical evidence and even stated, "[t]he objective evidence supports a medically determinable impairment of carpal tunnel syndrome." [DE 14 at 23]. Specifically, the ALJ cited (1) EMG studies in November 2015 that revealed moderately severe nerve entrapment on the right dominant hand and moderate symptoms on the left; (2) a doctor's decision to increase the amount of medication for Seabolt's hand pain in February 2016; (3) and Seabolt's testimony that he could not lift more than 10 pounds, consistent with sedentary work. [*Id.*]; *see also* 20 C.F.R. § 404.1567(a).

The ALJ rejected this evidence, without explanation other than reference to a doctor's report from December 2015 indicating that the hand pain was stable. [DE 14 at 23]. The ALJ states that he has accounted for any potential limitations resulting from Seabolt's CTS in the RFC. However, without any discussion of the materiality of the

10

CTS evidence or whether Seabolt established a "reasonable probability" that the new evidence would have changed the 2013 ALJ's RFC based on the CTS evidence, the Court is again unable to determine whether the ALJ properly applied *res judicata* under *Drummond* by adopting the 2013 ALJ's RFC despite the new CTS evidence in the record. The Court is particularly challenged in this analysis because the 2013 ALJ's decision did not mention Seabolt's CTS making it difficult at best, impossible at worst, for the RFC to reflect properly any CTS limitations.

In the end, an ALJ on remand may determine that the evidence regarding Seabolt's shoulder impairment and his CTS is immaterial under the *Drummond* standard, thus not changing the ultimate result. However, the ALJ's failure to explain why he is rejecting objective medical evidence that explicitly contradicts his opinion prevents this Court from affirming the ALJ's decision as it stands. Thus, the case must be remanded.

    C.    **Step Five**

Seabolt's final contention is that the ALJ failed to properly orient the Vocational Expert ("VE") to Seabolt's actual RFC by not including all of the necessary limitations into the Step Five hypotheticals at the hearing. Given that this case is already being remanded because of an error in the RFC determination, the Court need not address this issue.

**III.**    **CONCLUSION**

For the above reasons, the Court concludes that the ALJ erred under the Sixth and Seventh Circuit standards by applying *res judicata* to the 2013 ALJ's RFC citing

11

*Drummond*. Therefore, Seabolt's instant appeal of the Agency's denial of disability benefits is **GRANTED**. This case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion.

    **SO ORDERED.**

    Dated this 23rd day of July 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
